UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| ANTHONY DAVID SMITH, | ) | | |
|---|---|---|---|
| Plaintiff, | ) ) ) | | |
| v. | ) ) | No. | 1:22-CV-037-DCLC-CHS |
| HAMILTON COUNTY GOVERNMENT, | ) ) ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION

Plaintiff, a former inmate in the Hamilton County Jail that is currently confined in the Rhea County Jail, has filed a pro se complaint for violation of 42 U.S.C. § 1983 arising out of various events during his confinement in the Hamilton County Jail [Doc. 2], a motion for leave to proceed *in forma pauperis* [Doc. 1], and his prisoner trust fund account statement [Doc. 5]. For the reasons set forth below, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**, and this action will be **DISMISSED** as the complaint fails to state a claim upon which relief may be granted under § 1983.

**I.    FILING FEE**

It appears from Plaintiff's motion for leave to proceed *in forma pauperis* [*Id.*] that he is unable to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion will be **GRANTED**.

Because Plaintiff is a Rhea County Jail inmate, he will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the

full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a claim upon which relief may be granted. *Twombly*,

550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B. Complaint Allegations

According to Plaintiff, before he entered the Hamilton County Jail on November 2, 2021 pursuant to a federal warrant, he explained to Special Agent Adam Baldwin of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") that he was a criminal informant and "did[] [not] need to be housed at the Hamilton [County] Jail" because he had had a former officer fired and arrested, and was "going to be involved in another investigation" of a Hamilton County narcotics lieutenant [Doc. 2 p. 5]. But Plaintiff was housed in the Hamilton County Jail anyway, and on an unspecified date, several Hamilton County Jail officers, including Officers Bells, Gassaway, Neal, and Thompson, made various comments to Plaintiff, including "[p]ay back is hell," "you mess with team blue we do[] [not] forget," and "who are you going to try to set up this time" [*Id.* at 6].

Unnamed Hamilton County Jail officers also placed Plaintiff in a booking cell with a floor covered in urine and feces [*Id.*]. Plaintiff then contracted a staph infection, officers bullied him, and unnamed jail officials denied him medical attention [*Id.*]. Unnamed officers also tried to move Plaintiff to general population and told him "we told everyone your snitching *ss was back[,] get the f*ck up time to face the music" [*Id.*].

Then, on January 22, 2022, Plaintiff was serving breakfast when another inmate, specifically James Terrell Hamilton ("Inmate Hamilton"), who was not supposed to be out of his cell while Plaintiff was serving food, assaulted Plaintiff from behind "with a blunt object" and knocked him unconscious for several minutes [*Id.* at 3–4]. Officer Taylor then "put up [Inmate] Holmes while he called for medical" [*Id.* at 4]. When medical arrived, Sgt. Hughes and Cpl.

3

Case 1:22-cv-00037-DCLC-CHS   Document 8   Filed 03/31/22   Page 3 of 8   PageID #: 46

Holland returned Plaintiff "to [his] cell with a large knot and contus[]ion on the back of [his] head" [*Id.*].

According to Plaintiff, these officers "were told that [Plaintiff] passed out and hit [his] head in order to cover up the incident" [*Id.*] Plaintiff has no memory of Inmate Holmes assaulting him and thought a spider had bit him when he woke up after this assault [*Id.*]. For five days after the incident, Plaintiff had an extreme headache, could not sleep, and could not lay down [*Id.*]. And Plaintiff still has moments where he blacks out, has lost his sense of smell, and has an extreme headache [*Id.* at 5]. Plaintiff asked medical to x-ray his head but they have not done so [*Id.* at 5].

After the assault, on January 26, Officers Taylor and Jackson told Plaintiff that Inmate Holmes had lied to them and said that Plaintiff spit in his food and was a snitch [*Id.* at 4–5]. Also, on an unspecified date, Officer Jackson allowed another inmate associated with Inmate Holmes's security threat group into Plaintiff cell, and that inmate threatened Plaintiff to keep quiet [*Id.* at 5]. And as of January 28, Plaintiff had received no medical attention and was in extreme pain [*Id.*].

Also, after Inmate Holmes assaulted him, Plaintiff spoke with ATF Officer Smith and he was then put in protective custody, but the "G3" protective custody cell into which unnamed officers placed Plaintiff had feces covering the walls and bunk and mold covering the walls, and Plaintiff did not receive covers, a mat, or toilet paper, despite his staph infection [*Id.* at 6]. Officers distributing meals in "G3" skipped Plaintiff's cell "several times a we[e]k", and Officer Neal threw Plaintiff's food over the top rail three times, causing Plaintiff to hop up the stairs on one leg [*Id.* at 6–7].

At some unspecified point, Nurse Faye looked at Plaintiff's leg and he received medical attention "due to sep[s]is setting in" [*Id.* at 7]. Nurse Faye also asked about the officers' "abusive treatments" and the skipping of Plaintiff's meals, and unspecified officers told Nurse Fay that "it

4

was pay back," and Sgt. Robertson told her "that he supported his officers in whatever they do" [*Id.*]. Nurse Fay had Plaintiff fill out papers about his issues, but Plaintiff later found those papers torn up under the steps while he was cleaning [*Id.*].

Also, according to Plaintiff, his lungs were clear as of August 22, 2021, but after he was placed in the protective custody "G3" cell that is covered in black mold, he has been sick constantly [*Id.*]. And Plaintiff had an x-ray on January 12, 2022 that showed he has a spot of cancer on his lung,[1] and he has been coughing up phlegm and mucus and having chest congestion and pain [*Id.*].

Then, on January 31, 2022, Plaintiff spoke to Sgt. Hughes and Cpl. Holland about Inmate Holmes's attack on him, and Sgt. Hughes told Plaintiff that unnamed officers had told Sgt. Hughes that Plaintiff had a seizure and struck his head, and that he had never heard anything different [*Id.* at 8]. Sgt. Hughes also told Plaintiff to press charges on Inmate Holmes, and that he would support that decision and "report the truth to security" [*Id.*]. Sgt. Hughes also stated that medical "should have been informed" about what happened to Plaintiff [*Id.*]. Since this conversation, x-rays and CT imaging have been ordered for Plaintiff, but they have not yet been done even though Plaintiff "ha[s] been found on the floor of [his] cell 3 times unconscious due to blacking out since 2/6/22" [*Id.*].

Plaintiff states that Nurse Joy witnessed "a very large pump knot on back of [his] head," and that another nurse practitioner "was furious and said [he] should have been rushed to the

---

[1] Plaintiff specifically states in his complaint that his January 12, 2022 x-ray showed "a spot of concurce [sic] on [his] lung" [*Id.* at 7]. The Court assumes this refers to cancer.

And notably, while it appears that Plaintiff seeks to attribute the cancer diagnosis to the mold on the walls of his protective cell in "G3," he specifically alleges that officers did not place him in that protective custody cell until after Inmate Holmes assaulted him on January 21, 2022 [*Id.* at 6–8].

5

hospital after she was contacted and neither were done [sic] since she[] [has] ordered x-rays [and a] CT scan which still as of today 2-10-22 have[] [not] been done" [*Id.* at 9].

Lastly, Plaintiff states that Detectives Posey and Short interviewed him about the alleged "cover up[,] and criminal charges are being sought against Inmate [H]olmes, and actions taken against the officers" [*Id.*].

The only Defendant Plaintiff names in this action is the Hamilton County Government [*Id.* at 1, 3]. But in the portion of his complaint designated for the name of the Defendant, Plaintiff also wrote "(HSCO)" [*Id.* at 1]. And in the portion of his complaint designated for this Defendant's "Official position," Plaintiff wrote "Hamilton County Jail" [*Id.* at 1, 3].

As relief, Plaintiff requests that "the Court [] pay Defendant for Damages and pain and suffering and close down the facility till [the] mold issue is addressed," and specifically seeks ten million dollars for pain and suffering [*Id.* at 10].

**C. Analysis**

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him of a federal right. 42 U.S.C. § 1983. For the reasons set forth below, even liberally construing the complaint in Plaintiff's favor, it fails to state a claim upon which relief may be granted for violation of § 1983.

First, to the extent that Plaintiff intended to sue the Hamilton County Jail or the Hamilton County Sheriff's Office ("HCSO"), neither is a "person" subject to suit under § 1983. *Cage v. Kent Cty. Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (stating that "[t]he district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983"); *Mathes v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:10-cv-

6

0496, 2010 WL 3341889, at *1–2 (collecting cases holding that police and sheriff's departments are not entities subject to suit under § 1983) (M.D. Tenn. Aug. 25, 2010).

Moreover, while the Court liberally construes Plaintiff's complaint as against the municipality Hamilton County, Plaintiff has not set forth any facts from which the Court can plausibly infer that a custom or policy of this municipality was the moving force behind any violation of Plaintiff's constitutional rights, such that it may be liable for the incidents in Plaintiff's complaint under § 1983. *See, e.g., Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of [its] official policies or established customs").

### III.  CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**;

2. Plaintiff will be **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk will be **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

6. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

7

Case 1:22-cv-00037-DCLC-CHS   Document 8   Filed 03/31/22   Page 7 of 8   PageID #: 50

**ENTER:**

s/Clifton L. Corker
United States District Judge